JAMES T. CONNER AND OTHERS
vs.
ANNA MARIA OGLE, EX'X
OF BENJAMIN OGLE AND OTHERS.

DECEMBER TERM, 1848.

[CONSTRUCTION OF WILL—ORPHANS COURTS, THEIR POWERS, &C.—EXECUTORS AND TRUSTEES.]

A TESTATRIX devised her estate real and personal to trustees in trust to "apply the rents and profits thereof to the support and maintenance of her daughter during her life, and to the support and maintenance, and education of her children," "and after her death in trust, for her children to be equally divided amongst them." The daughter at the date of this will, and death of the testatrix had four children by her then husband, who died during the life of the testatrix. She subsequently married again, and had by her second husband five children. HELD—

1st. That under this will the children of the daughter by the second marriage, as well as those by the first are entitled to maintenance and education out of the interest of the trust fund during the life of the daughter, and to a distributive share of the principal after her death.

2d. The provision for maintenance and education commences from the birth of each child or the death of the testatrix and continues during its minority, or until its marriage, if a female, or the death of its mother.

3d. The representatives of such of the deceased children to whom none of the interest of the trust fund was paid for their support and maintenance, are entitled to an account for the sum which should have been paid to them.

4th. The trustee appointed under this will, might have performed all the duties of the trust without an application to a court of equity.

5th. A decree of the Court of Chancery, passed under the act of 1785, ch. 72 sec. 4, appointing the trustee named in the will, trustee for the sale of the real estate devised by the will, invested him with all the power which he would have had under the will, and imposed upon him the same obligations by which he would have been bound by the will.

6th. The trustee having paid into court the proceeds of the real estate, in pursuance of the order of the Chancellor, he is not responsible afterwards to any person who may establish a claim to them, as he acted under the authority of a court of competent jurisdiction.

It is the duty of an executor to use dispatch in the settlement of the estate; the period allowed by law for that purpose is not a prescribed delay, but rather a restriction of it.

Where the same person is both trustee and executor under a will, and settles up the personal estate in the Orphans Courts, the balance, after such settlement, remains in his hands as trustee, and not as executor.

There is no special power or jurisdiction given to the Orphans Courts over a trust created by a will for the support of minor children, and that court has no general jurisdiction over trusts.

Accounts passed by administrators and executors in the Orphans Courts, are themselves *prima facie* evidence of their correctness.

The executor or administrator administers the estate *in pais*, and the obligation is upon him to ascertain the individuals entitled to legacies, distributive shares and residues, and not upon the Orphans Court.

The power given by the act of 1798, ch. 101, to distribute the surplus is not the same as that to pass the claims of creditors, or make allowances in the settlement of the estate.

An order of the Orphans Court, directing an executor to pay "to the guardian of the minor children of G. and M. the property in his hands, to which said children are entitled under the will of H. M.," where the executor has not complied with requisitions of the 12th sec. of the 14th sub ch. of the act of 1798, ch. 101, will not protect him in the payment of a balance of money in his hands as executor, against the claims of other parties than those for whose benefit he paid the same.

The 12th section of the 15th sub ch. of the act of 1798, ch. 101, applies only to contested questions, *inter partes*, and not to *ex parte* proceedings.

Wherever there is a suit in Chancery, by an executor or any person interested in the estate, for the administration of the assets, and the executor pays either to creditors, legatees, or distributees, by order of the court, he is protected by the order.

But the Orphans Courts have no jurisdiction, except what is given by the legislature, and they must exercise the powers given in accordance with the grant.

A testatrix, after bequest of some specific articles of plate, bequeathed as follow, "the rest of my plate I should wish to be divided among the children of my daughter, unless my trustees should think it most advisable to sell it for their use." HELD—

That the residue of the plate so bequeathed, vested immediately on the death of the testatrix in the children of her daughter then born, and the power to the trustees to sell does not extend to the death of the daughter, but must be exercised within a reasonable time : but jewels cannot be deemed plate.

---

[Mrs. Henry Margaret Ogle, by her last will, executed on the 7th of April, 1814, devised as follows :

"I give and devise all my estate, real, personal and mixed, (except what shall be hereafter mentioned,) to my son Benjamin Ogle, my son-in-law John Tayloe, and my friends Richard

Tasker Lowndes and George Calvert, and to the survivors and survivor of them, and the heirs of the survivor in trust, to pay all my just debts and funeral expenses as soon as practicable after my decease, and in a manner most advantageous to my estate ; and secondly, in trust, to apply the said estate and the rents and profits thereof, to the support and maintenance of my daughter, Mary Bevans, during her life, and the support and maintenance and education of her children, free from the power and control of her husband, and from and after her death, in trust, for her children, to be equally divided amongst them, as tenants in common, and to their respective heirs; and in case at any time hereafter it would, in the judgment of my trustees, or a majority of them, or the survivors or survivor of them, best promote the objects of the trust hereby created, to sell all, or any part of my estate, then, I hereby authorize my trustees, or a majority of them, the survivors or survivor of them and the heirs of such survivor, to sell and convey all or any part of my said estate, and to vest the proceeds in lands or banks, or other moneyed institutions, and apply from time to time, the rents, profits, interests or dividends thereof, to my said daughter and her children, in the manner hereinbefore directed, free from the power and control of her said husband, my trustees taking care that the children of my said daughter be well maintained and educated, and after her death, the whole to be equally divided amongst them. If any child dies during the mother's life, leaving children, then the said children to take and stand in the place of their deceased parent. To my daughter, Ann Tayloe, I leave my diamond and pearl hoop rings, and breast pin, and two silver goblets, gilt on the inside. To my son Benjamin Ogle, I give my large silver watch, with the Ogle arms in the middle, as a small remembrance ; to my daughter-in-law, Anna Maria Ogle, I give my silver bread-basket. To my daughter, Mary Bevans, I give all my clothes, and what new things I may have by me, likewise my bed and furniture, window curtains and chair covers, alike my easy chair and cradle, and the chairs in my room, my silver coffee-pot, pudding dish, skillet and dozen of each sort of spoons, the plate at her

death to her children.   To Laura Bevans, Mr. Harford's pic-
ture, set with diamonds, and I beg George Ogle Bevans may have
a gold watch as soon as he is old enough to take care of it, and
my seals.   All my sheets, table linen and quilts, I give to Mary
Bevans.   To Laura my writing desk, and looking glass, and
dressing table, and two silver sauce-boats.   The rest of my plate
I wish to be divided among the children of my daughter, Mary
Bevans, unless my trustees should think it most advisable to sell
it for their use.   I appoint my above named trustees the exe-
cutors of this my last will and testament.''

By a codicil, executed on the 23d of June, 1815, the testatrix
manumitted her negro man, Cæsar, and gave him an annuity of
$20 per annum, during his life, also her negro man Orson, and
her negro cook, Nan Bowser, and gave each an annuity of $10
per annum, during their lives ; also her negro girl, Nance,
whose freedom was to commence on the 1st of January, 1818,
and requested these devises to be scrupulously carried into
effect.

By another codicil, dated the 28th of July, 1815, the manu-
mission of the negro girl, Nance, was postponed until the 1st
of January, 1820, and her services in the mean time were be-
queathed to Laura Bevans and Mary R. Bevans, daughters of
Mary Bevans.

At the date of the above will, Mary Bevans, the daughter of
Mrs. Ogle, was the wife of George Bevans, who died during the
lifetime of the testatrix.   The said George and Mary Bevans
had four children, George O. Bevans, Laura Bevans, John T.
Bevans and Mary Ridout Bevans, all of whom, with their said
mother, were living at the death of the testatrix, who died shortly
after the date of the last codicil above mentioned.

On the 30th of August, 1815, the will was admitted to pro-
bate in the Orphans Court of Anne Arundel county, and the
other persons named in the will as trustees and executors hav-
ing declined those trusts, letters testamentary were thereupon
granted to Benjamin Ogle, who, on the 14th of September, 1816,
returned an inventory of the personal estate, and on the 24th
of February, 1816, passed a final account in said Orphans Court,

showing a balance in his hand due the estate of $7425 48½, and on the 27th of February, 1816, the said court passed the following order:

"Ordered by the court, that Benjamin Ogle, administrator with the will annexed, of Henry Margaret Ogle, pay over and deliver unto John Addison, the guardian of the minor children of George and Mary Bevans, the property in his hands to which said children are entitled under the will of said Henry Margaret Ogle, and take said guardian's receipts for the same, agreeably to law."

On the same day, acting under the authority of this order, the said Benjamin, as executor, delivered to the said guardian, various articles which were specifically bequeathed to the children, $150 in money, and sundry bonds or notes taken for the property sold, to the amount of $5929 20, and took his receipt therefor.

On the 15th of September, 1815, Benjamin Ogle, as next friend of the above mentioned four infant children of Mrs. Bevans, filed a petition in Chancery, suggesting that all the trustees named in the will of their grandmother had declined the trusts confided to them, and praying that he might be appointed trustee to sell the real estate of the deceased, agreeably to the spirit and intention of her aforesaid will. A copy of the will was exhibited with this petition, and on the same day the Chancellor, (*Kilty*,) after stating that he had read and considered the petition and the will accompanying it, passed a decree "that the real, personal and mixed estate, whereof Henry Margaret Ogle, died seized, and which by her will was directed and authorized to be sold, be accordingly sold." The decree then appointed Benjamin Ogle trustee to make the sale, prescribed the terms thereof, and directed the trustee to "bring into this court the bonds taken on the sale, together with the purchase money arising from the said sale, to be applied under the Chancellor's direction according to the will."

The trustee gave bond as such, and on the 23d of October, 1815, reported a sale of part of the real estate for $6760, cash, and on the 15th of November following, he made a further re-

port of the sale of the residue thereof, part for $17,865 12½, on a credit of twelve months, for which he had taken the bonds of the purchaser, and the rest for $23,400, cash. In his last report, the trustee states that Mrs. Anne Ogle has a claim by mortgage against the said estate amounting to $28,885. The sales were ratified by the Chancellor, on the same days on which they were reported, the Chancellor remarking in his order of ratification, "that the trustee for making the sale, being one of the trustees named in the will of H. M. Ogle, and the devisees entitled to the greatest part of the proceeds being minors it is not thought necessary to have the usual publication made."

On the 22d of the same month, (November, 1815,) Mrs. Anne Ogle filed in the cause a petition, exhibiting her mortgage, and praying that the trustee be directed to pay the same out of the proceeds of sale, and on the day following, in pursuance of an order of the Chancellor to that effect, the trustee paid to Mrs. Anne Ogle the sum of $28,988 81 in full of her claim.

On the 1st of December, 1815, the Chancellor passed an order in the cause, authorizing the trustee "to deposit in the Farmers Bank of Maryland, any money arising from the sale of the real estate, not appropriated, which is to be placed to the credit of the real estate of H. M. Ogle." And shortly thereafter, the trustee deposited in said bank, $17,562 89, the residue of the proceeds of the real estate, after deducting his commissions and expenses.

On the 25th of January, 1816, Mrs. Mary Bevans filed a petition, praying that so much of the proceeds of sale "may be vested in the hands of a trustee, and appropriated under the direction of the Chancellor, the clear annual profits of which shall suffice for a suitable maintenance to the petitioner." And on the same day an order was passed, in which the Chancellor expressed his opinion that the annual sum of $580 should be appropriated to the petitioner for her maintenance; "the said sum to be paid to her by the trustee in such proportions, and at such times as he may think proper, subject to any future order, and the said trustee is authorized, from time to time, to invest a

sufficient part of the proceeds of the estate to raise the said sum in government or bank stock." The trustee, Benjamin Ogle, declined this trust, and by another order passed on the 28th of February of the same year, (1816,) the Chancellor appointed John Addison trustee, in place of said Ogle, under said order.

About this time Mrs. Bevans intermarried with James Conner, and on the 29th of February, 1816, the Chancellor passed another order, directing a check for the money in bank to be drawn in favor of said John Addison. "He will apply as much thereof as may be necessary to the payment of the annuity to Mrs. Bevans, now Mrs. Conner, with such commission as may be allowed, and the rest as guardian to the infants. The Register is directed to draw a check on Farmers Bank of Maryland, in favor of John Addison, or bearer, for $17,562 89, out of the money deposited to the credit of the real estate of H. M. Ogle, the said John Addison being trustee under the order of this court, and guardian to George Bevans and others." A check was drawn accordingly, and the money paid over to the said John Addison, who purchased, as trustee of Mrs. Conner, 145 shares of the stock of the Farmers Bank of Maryland, at a cost of $8,618, and as guardian of the four Bevans, 268 shares, at a cost of $15,113, making a total investment of $23,731, exceeding the proceeds of the real estate by $6,168 11, which represents the personal estate received by him from the executor. Of this stock he transferred on the 10th of August, 1825, to Laura Bevans 81 shares, to Mary R. Bevans 87 shares, and on the 21st of November, 1833, to John T. Bevans 26 shares. The remaining 74 shares he sold from time to time as the exigencies of the trust required. His accounts as guardian show a balance on the 9th of January, 1825, in favor of Mary R., John T. and George O. Bevans, of $3,867 20 each, and in favor of Laura Bevans, $3,566 93. George O. Bevans died in 1825, and the said John Addison became his administrator, and distributed his estate, giving $1,218 11 to each of his surviving sisters and brother. Mary R. Bevans intermarried with William C. Ogle in December, 1834, and died the year following, intestate and without issue, and after her death a greater

part of the 87 shares of stock of the Farmers Bank of Mary-land, standing in her name, were transferred into the name of her surviving husband.

By her marriage with Conner, Mary Bevans, the daughter of the testatrix, had five children, viz. Emma, born in 1818, and died intestate and without issue in 1837. James Thomas, born in 1821, Harriet, born in 1823, and died a year or two thereafter, Henrietta, born in 1825, and Benjamin, born in 1830.

On the 11th of June, 1828, Benjamin Ogle, as executor of Mrs. H. M. Ogle, passed in the Orphans Court of Anne Arundel county an additional final account, charging himself "with cash received for negroes under the treaty of Ghent, $3,402, and showing a balance in hand due the estate of $3058 01, and on the same day the said court passed the following order: "Mr. Ogle, as executor of his mother, will charge himself with the net amount he received for the twelve negroes belonging to her estate, and he is allowed 10 per cent. commission upon that amount, inasmuch as the court would have allowed that commission in case the negroes had been returned in the inventory. The six negroes that were devised to Mrs. Bevans do not belong to Mrs. Ogle's estate, but to Mrs. Bevans for her life, and after her decease to her children, equally of course. The money received for them ought to be so invested that Mrs. Bevans (now Conner) may derive the benefit or receive the interest, and after her decease the principal to go to her children in the same way that the negroes would have done if they had remained in the state of Maryland." The negroes referred to in this order had been carried away during the late war with England.

On the 1st October, 1828, the Orphans Court made distribution of the above balance in the hands of the executor, giving to Mrs. Conner one-third thereof, $1,019 33⅓, and to Mary R., Laura and John T. Bevans, $679 55 each, being the residue thereof. On the same day, Benj. Ogle, as executor of his mother, passed a further additional final account, in which he charges himself "with cash received for negroes under the treaty of Ghent, $1,291 68," and showing a balance due the estate of $1,030 34, which, on the same day, was by order of the court distributed,

one-third to Mrs. Conner, $343 44, and the residue to Mary R., Laura and John T. Bevans, giving to each $228 97.

On the 23d of October, 1835, upon application of Mrs. Conner and her husband, Dr. John Ridout was appointed, by order of the Chancellor, trustee for Mrs. Conner, in place of John Addison, who had recently died, and duly qualified as such.

Mrs. Conner died in July, 1842, and on the 11th of June, 1844, John T. Bevans filed a petition in the cause alleging that he and his sister Laura Bevans, were, under the will of their grandmother, solely entitled to the stock held by the said Ridout, in trust for his mother during her life, and praying that the Chancellor would direct the trustee to divide the same between them. This petition was answered by the Conners, the children of the second marriage, who insisted that by the will of their grandmother, they, as well as the Bevans, were entitled to the support, maintenance and education out of the income of the trust estate therein provided for the children of Mrs. Bevans, during the life of their mother, and after her death, to an equal distributive share of the principal fund. Upon this petition and answer, the Chancellor, (*Bland*,) on the 20th of November, 1844, passed the following important order.

"Ordered, that this case be, and the same is hereby referred to the Auditor, with directions to state an account or accounts making a distribution of the estate among the said parties, from the proceedings and proofs now in the case, and from such other proofs as may be laid before him. According to the terms of the bequest of the testatrix, Henry M. Ogle, deceased, her daughter Mary, and all her children, as well those of her second as of her first marriage, are entitled to participate in the benefit of nothing more than the rents, profits, interests and dividends arising from the property bequeathed, during the lifetime of Mary, giving to each of her children a due proportion thereof, for the purposes of its maintenance and education, only during its minority, from the time of its birth or death of the testatrix, until its death, or the marriage of a female, or the death of its mother; and for this purpose all payments of such profits to the mother, or by the said trustees, for such

36*

maintenance and education, are to be regarded as proper applications thereof. But as it appears to have been the intention of the testatrix, that no part of the capital or principal of the property bequeathed shall be so applied to the use of the said Mary or her children, the Auditor will charge each of the children with so much of such principal as he or she may have received, and award to him or her nothing, until the other children may have awarded to them an equal amount from the estate now to be distributed. So much of the rents, profits, interest or dividends of the estate as accrued and became demandable and payable to the said Mary, for the use of herself and her infant children, during her lifetime, and which were not paid to her, must be awarded to her husband, the said James Conner. Subject to such directions, a distribution of the whole estate is to be now made among the children of the said Mary, who were alive at the time of her death, and of such of them, if any, who may have died before that time leaving issue. The present trustee is hereby allowed a commission of six per cent. on all sums collected and disbursed by him, and the Auditor is hereby directed to state an account in the manner before mentioned, showing the amount now in his hands, to the end that the same may be brought in or disposed of as the court may direct, and the said trustee discharged. And the parties are hereby authorized to take testimony in relation to said accounts before any justice of the peace, on giving three days notice as usual, provided that such testimony be taken and filed in the chancery office on or before the first day of January next."

The result of the account stated by the Auditor, in conformity with the above order, was that the whole of the stock which had been invested for the benefit of Mrs. Conner was distributed amongst the three surviving children by Conner, giving to each $2,872 66⅔.

Benjamin Ogle, the trustee and executor named in the will of the testatrix, died in April, 1844, leaving a will, by which he devised a life estate to his widow, Anna Maria Ogle, in all his real and personal estate, and after her death the same to be

equally divided among his two sons, and appoints his said wife his executrix, to whom letters testamentary on his personal estate were duly granted.

On the 7th of October, 1844, James T., Henrietta M. and Benjamin O. Conner, and Thomas E. D. Poole as administrator of the deceased children, Emma and Harriet Conner, filed their bill against Laura Bevans, John T. Bevans, William C. Ogle, surviving husband of Mary R. Bevans, Anna M. Ogle, executrix of Benjamin Ogle, and the two sons and devisees of said Benjamin Ogle, and Dr. John Ridout, for an account and distribution of the estate of the deceased Henry Margaret Ogle.

This bill, after setting out the will of Mrs. Ogle, and the proceedings thereunder as above stated, exhibits the accounts of Benjamin Ogle as executor, and charges that it appears by them that there is due by said executor to the personal estate of the deceased the sum of $11,513 84. It then avers that these accounts contain many improper and illegal allowances, and in illustration thereof, states that in the first account the executor is allowed for advances made to Mrs. Bevans, then Conner, and her children $620 90 out of the principal of the estate, whereas no part of said principal was authorized by the will so to be paid or expended for the said Mary or her children, but only the rents, profits, interest or dividends thereof. It also charges that large sums of money, in principal and interest and guarantees of personal property, were received by the executor, belonging to the said personal estate, which have not been accounted for by him, or have been illegally and contrary to the directions of the said will, misapplied.

That Benjamin Ogle and others, having charge of the property, have wholly neglected the directions of the will as to the support, maintenance and education of the children of said Mary, no part of the same having ever been expended in the maintenance or education of the children of said Mary by Conner, but all aid or assistance to them has been positively and continually refused by the said Benjamin Ogle. That he

hath not properly and legally accounted for the proceeds of the said real and personal estate which came or should have come to his hands as trustee and executor as aforesaid, never having paid any part thereof to the Conners. That most of said real and personal estate hath been, in the lifetime of the said Mary Conner, by gross violation of duty and breach of trust of said Benjamin Ogle, and by his conspiracy with the children of the said Mary by her former husband, and others, to injure and oppress the complainants, misapplied and illegally appropriated in a greater or less amount, to the exclusive use and advantage of the children of the said Mary by George Bevans, her former husband; whereas, no part of the principal thereof could legally be divided until the death of the said Mary, and on that event should all have been divided equally among all the children of said Mary, including complainants. That a portion of the money so bequeathed to all the children of the said Mary, was illegally and in violation of his duty as trustee, invested by Benjamin Ogle in the purchase of a tract of land in Frederick county, in his name, to be held by him in trust for the use of said Mary Conner during her life, and after her death, in trust for her surviving children by her former husband, Bevans. A copy of the deed conveying the land is exhibited with the bill.

The bill then prays that Anna M. Ogle, as executrix of Benjamin Ogle, may account for the personal estate, and proceeds of the real estate of Henry M. Ogle, received by him as executor and trustee, with such interest as he should be chargeable with, and that Laura Bevans, John T. Bevans and William C. Ogle, as representing his deceased wife, Mary R. Bevans, may account for the sums of money and property paid over and conveyed to them severally as parts of the estate of the said testatrix, and the profits thereof, and that the land in Frederick county so purchased by Benjamin Ogle, and conveyed to him in trust, may be assured to complainants, or sold for the purposes of division, and for general relief.

The answer of Mrs. Anna M. Ogle, as executrix of Benjamin Ogle, relies upon the facts before stated in relation to the

sale of the real estate and the application of the proceeds thereof by her testator under the direction of the Court of Chancery, as a complete discharge of his estate from all further accountability therefor. She avers that the personal estate which came to the hands of her testator has been accounted for, and in reference to the items of allowance in the final account made to or for Mrs. Bevans, she avers they were for the necessary subsistence of those parties, and insists that at this time every presumption ought to be made in their support. She insists, likewise, that the Orphans Court had authority, under the circumstances, to direct the executor to make moderate advances for the mother and children, for their reasonable and necessary subsistence. She relies upon the order of the Orphans Court, directing Benjamin Ogle to pay over the personal estate of his testatrix to John Addison, as guardian to Mrs. Bevan's children, and the actual payment thereof to Mr. Addison, as discharging him from all further liability on account of the balance of personal estate, shown to be in his hands by the final account. She avers her belief that the entire balance was paid over to the guardian, and insists that in the absence of proof to the contrary, and after the lapse of time and death of the executor and guardian, it ought to be presumed that the accounting between them was complete, and that the entire balance was paid over. She relies on the second and third administration accounts, passed in the year 1828, the order of the Orphans Court, and the distribution made pursuant to that order, as a full administration of the funds received under the provisions of the treaty of Ghent.

The answer of Laura Bevans, which, by agreement, is to be treated as the answer of John T. Bevans, insists that upon the proper construction of the will of Henry M. Ogle, deceased, the principal estate was distributable amongst the children of Mrs. Bevans, in being at the death of the testatrix, or, if the disposition in regard to the principal estate were contingent until the death of Mrs. Bevans, the estate vested in her children living at her death, and in either event Poole, as administrator of the deceased children, could have no title. She admits that

Benjamin Ogle, as executor, made payments to her guardian, and to her on account of her share of the personal estate of the testatrix, and that other moneys, parcel of the proceeds of the real estate, were likewise paid out of the Court of Chancery to her guardian. All these payments she insists were rightly made. She admits that she has received from her guardian a large sum of money. She settled with him without examining strictly into the state of his accounts, and her religious avocations since that time, (she being a nun professed,) have left her neither time nor inclination to ravel into accounts which she has always believed were settled rightly by her guardian. She denies her liability to account for or restore any part of the moneys which she has received. She avers that a considerable part of the profits of the estate have been applied to the maintenance and education of Mrs. Conner and her children, the complainants, and that said profits have been adequate to sustain the said children as comfortably and as creditable in every respect as the other children have been sustained, so that the said Conners have no cause to complain on this ground of the application of any part of the funds. She denies that she is accountable for the interest or profits received on the fund distributed to her since said fund, if not rightfully distributed, was at least distributed under an impression and conviction entertained by all parties that it was so distributable, and the same has been used and employed by her as her own, and the profits expended by her under a conviction that they were her own absolute right.

William C. Ogle, by his answer, admits that in December, 1834, he intermarried with Mary R. Bevans, and that she died in the the following year intestate and without issue. He admits that his deceased wife in her lifetime did receive from her guardian or some other person as her part of the trust estate eighty-seven shares of the stock of the Farmers Bank of Maryland, and took for the residue a note from the executor, amounting to about $900. But he denies that he is responsible for said sum of money or property in any manner whatever. He insists that the estate was rightfully distributed by courts of competent authority, and that the claims of the complainants, if they ever had any against him, are barred by limitations.

The Chancellor (Johnson) having been counsel for complainants, referred the case on the 1st of February, 1849, to the *Honorable Nicholas Brewer*, an Associate Judge of the Third Judicial District, who delivered the following opinion, and passed the following order, on the 2d of March, 1849.]

This case was referred to me, as an Associate Judge of the third Judicial District, by the certificate of his Honor, the Chancellor, on the first of February last, and being ready for hearing, was fully argued on both sides.

Mrs. Henry M. Ogle, on the 7th day of April, 1814, executed her last will, and died on the 14th day of August, 1815. By her will she "devised all her estate, real, personal, and mixed, to her son, Benjamin Ogle, and three other trustees, to them, the survivors of them, and the heirs of the survivors, in trust, to pay all her just debts and funeral expenses, as soon as practicable after her decease, and in the manner most advantageous to her estate ; and secondly, in trust, to apply the said estate and the rents and profits thereof, to the support and maintenance of her daughter, Mary Bevans, during her life, and the support and maintenance and education of her children, free from the power and control of her husband, and from and after her death, in trust for her children, to be equally divided amongst them, as tenants in common, and to their respective heirs, and in case at any time thereafter it should, in the judgment of her trustees, or the survivor or survivors of them, best promote the objects of the trust thereby created, to sell all or any part of her said estate, then she authorized her trustees, or a majority of them, the survivor or survivors of them, and the heirs of such survivors, to sell and convey all or any part of her said estate, and to vest the proceeds in lands, or banks, or other moneyed institutions, and apply from time to time, the rents, profits, interests, or dividends thereof, to her said daughter and her children, in the manner hereinbefore directed, free from the power and control of her said husband, her trustees taking care that the children of her said daughter be well maintained and educated, and after death the whole to be equally divided amongst

them; if any child die during the mother's life, leaving children, then the said children to take and stand in the place of their deceased parent."

The same trustees were appointed her executors. Three of the trustees declined the trust and executorship, two by letters of the 23d of August, addressed to B. M. Ogle, and the third, by signing a written paper, on the 29th or 30th. The will was proved by Samuel Ridout, one of the witnesses, and the executor, B. Ogle, who took out letters testamentary on the 14th September, 1815, he returned an inventory: on the 15th, a petition was filed in the Chancery Court, by the children of Mrs. Bevans, by B. Ogle, as their next friend, setting forth the will and death of Mrs. Ogle, and that the said trustees, appointed as aforesaid, by the said will, had declined acting in pursuance of the authority thereby vested in them, by reason whereof, the provisions of the said will, which were designed for the benefit of your orators, had failed to be effectual, and the benevolent intentions of the testatrix toward the orators, would be frustrated. They, therefore, pray that Benjamin Ogle may be appointed trustee, for the sale of all the above mentioned real estate, agreeably to the spirit and intention of the aforesaid will.

On the same day the petition was filed, a decree passed for "the sale of the real, personal and mixed estate, whereof the said H. M. Ogle died seized, and which by her will was directed or authorized to be sold;" on the 23d of October, 1815, the trustee reported the sale of a house and lot in Annapolis, which was on the same day ratified by the Chancellor without the usual publication: "the trustee making the sale, being one of the trustees named in the will of H. M. Ogle, and the devisees entitled to the greatest part of the proceeds being minors."

On the 15th of November, 1815, the trustee reported a sale of the residue of the real estate, which was ratified by the Chancellor on the 22d, also without the usual publication. "The devisees entitled to the greatest part of the proceeds being minors, and the trustee being their nearest relative, and the only person whose duty it would be to object to the sale if not advantageous."

On the same day that the last sale was ratified, Anne Ogle filed her petition praying that a certain mortgage debt, being a lien on part of the premises sold, should be paid. The original mortgage was exhibited with the petition, as appears from the Chancellor's order on it, though not referred to in the petition, and appearing to have been filed on the 23d. On the same day (22d November) the Chancellor ordered the trustee to pay to the petitioner the sum of £10,890 16s. 4d.—$28,988 81— by assignment of bonds or in money, or both, which was paid, per receipt on the mortgage, on the 23d.

The residue, deducting commissions, was all paid into court in pursuance of the Chancellor's order of December 1st, 1815.

On the 25th of January, 1816, Mrs. Bevans files her petition in the Chancery Court, stating that the balance of the proceeds of the real estate, after the payment of debts, was about $24,562, and prays that so much of the said sum may be vested in the hands of a trustee and appropriated under the Chancellor's direction, the clear annual profits of which shall suffice for a suitable maintenance to your petitioner. To this B. Ogle annexed an answer, admitting the facts and consenting to the appropriation. On the same day, the Chancellor passed an order appropriating so much as would annually produce the sum of $580—to be invested by the trustee; but the trustee, in writing, without date, declining to act as trustee relative to the appropriation made to Mrs. Bevans, and praying the Chancellor to appoint some other person, he, on the 28th of February, 1816, appointed John Addison, of Prince George's county, trustee, in the place of the said Benjamin Ogle, under the said order; and on the 29th, directed a check to be drawn in favor of Addison for the money in bank, he applying so much as may be necessary to the annuity to Mrs. Bevan, now Mrs. Conner, and the rest as guardian to the infants. The whole amount was paid over accordingly to Addison, and thus was the whole amount of the real estate disposed of.

Nothing further was done in Chancery in reference to the real estate until 1835, except the filing on the 4th of March, 1819, a petition (or memorial, as he calls it,) by B. Ogle as

brother and next friend of Mrs. Bevans, praying that a part of the money invested for her should be converted into land—which, on the 6th, the Chancellor decided could not be done on that petition, B. Ogle having declined the trust.

On the 24th of February, 1816, B. Ogle passed his first and final account as executor in the Orphans Court of Anne Arundel county, leaving a balance of $7425 48. On the 27th, the Orphans Court passed an order directing the executor to pay over and deliver unto John Addison, the guardian of the minor children of George and Mary Bevans, the property in his hands to which said children are entitled under the will of H. M. Ogle, and on the same day the executor paid over property and notes to the amount of $5929 20. Whether the whole has been paid is a matter of dispute.

On the 11th of June, 1828, a paper was left on file in the Orphans Court of Anne Arundel county, by B. Ogle, showing himself as executor of H. M. Ogle, to have received for eighteen slaves the net sum of $3402 00, paid under the treaty of Ghent, upon which the court passed an order the same day, directing him to charge himself for the net amount received for twelve negroes belonging to her estate, and stating that the six negroes that were devised to Mrs. Bevans do not belong to Mrs. Ogle's estate, but to Mrs. Bevans for her life, and after her decease to her children equally. Of course the money received for them ought to be so invested that Mrs. Bevans, now Mrs. Conner, may derive benefit or receive interest, and after her decease, the principal to go to her children in the same way that the negroes would have done, if they had remained in the state of Maryland.

In pursuance of this order, he passed his final account on the same day, showing the balance to be divided; and on the 1st. of October of the same year, passed an additional final account of a further sum from the same source, and on the same day distributions were made, giving to Mrs. Bevans one-third of each balance and dividing the residue between her children, the the Bevans. Her part was invested in the land in Washington county, and the portion of her children paid over to them.

In 1844, after the death of Mrs. Bevans, a petition was filed in the name of the Conners, her children by a second marriage, claiming to be equally entitled with the Bevans to the estate of H. M. Ogle, upon which the Chancellor passed an order, November 20th, 1844, deciding that, "according to the terms of the bequest of the testatrix, H. M. Ogle, deceased, her daughter Mary and her children, as well those of her second as of her first marriage, are entitled to participate in nothing more than the rents, profits, interest and dividends arising from the property bequeathed during the lifetime of Mary, giving to each of her children a due proportion thereof, for the purposes of maintenance and education only during its minority, from the time of its birth or death of the testatrix, until its death or the marriage of a female, or the death of its mother, and for this purpose all payments of such profits to the mother, or by the said trustee for such maintenance and education, are to be regarded as proper applications thereof. But as it appears to have been the intention of the testatrix that no part of the capital or principal of the property bequeathed should be so applied to the use of the said Mary or her children, the Auditor will charge each of the children with so much of said principal as he or she may have received, and award to him or her nothing until the other children may have awarded to them an equal amount from the estate now to be distributed. So much of the rents, profits, interest or dividends of the estate, as accrued and became demandable and payable to the said Mary, for the use of herself and her infant children, during their lifetime, and which were not paid to her, must be awarded to her husband, the said James Conner. Subject to these directions, a distribution of the whole estate is now to be made among the children of the said Mary, who were alive at the time of her death, and of such of them, if any, who may have died before that time leaving issue."

The first question to be considered in this case is, in what relation did Benjamin Ogle stand to the children of Mrs. Bevans in the receipt and distribution of the real and personal estate of H. M. Ogle? He was, by her will, appointed one of four trus-

tees and executors, to whom full power was given for the sale, conveyance and disposition of her whole real, personal and mixed estate, agreeably to its provisions. Three of these trustees renounced their trust and executorship. Benjamin Ogle took out letters testamentary on the personal estate, and might alone have performed all the duties of the trust without an application to the court of equity, 1 *Powell on Mortgages*, 279, *et seq.* What his actual intentions were, with regard to the whole trust, is not very clear; and he does not appear to have acted under any legal advice in the commencement of his proceedings in or out of court.

His first step after taking out letters testamentary and returning an inventory of the personal estate, without any positive disclaimer as to the trust, or any explicit disclosure of his opinion as to his right under the circumstances to act as such, was to file on the 15th of September, 1815, a petition in the Chancery Court, in the name of the children of Mrs. Bevans, by him as their next friend, and signed by him, in which it is stated, "that the several trustees appointed as aforesaid, by the said will, have declined acting in pursuance of the authority thereby vested in them, by reason whereof the provisions of said will, which were designed for the benefit of your orators, have failed to be effectual," &c., the prayer of the petition being for the appointment of B. Ogle, trustee for the sale of the real estate only.

This petition is the act of the infants, yet it may be treated in some measure as his act, and as a sort of renunciation of the trust under the will, and an attempt to obtain a new appointment confined to a portion of the subject matter of the trust. The proceeding, however, was one sanctioned by the act of 1785, ch. 72, sec. 4, authorizing the Chancellor, in such cases, to appoint a trustee, for the purpose of selling and conveying such property, and applying the money arising from the sale to the purposes intended; and the Chancellor, treating it as such, passed his decree "for the sale of the real, personal, and mixed estate, of which the said H. M. Ogle died seized, and which by her will was directed or authorized to be sold." This decree

invested him with all the power which he would have had as the only acting trustee under the will, or which the whole of the trustees would have had if they had accepted the trust, and it also imposed upon him the same obligations by which he or they would have been bound, except in so far as he may have been subsequently discharged from them by the court; it also gave the court full control of the trustee and the trust property.

Let us next, then, examine his liabilities as to the real estate, and how he has been acquitted of them; he proceeded to sell the whole real estate, and the sales were confirmed; no account was stated of the proceeds of the sale, but part of them was paid to a creditor of the deceased, Mrs. Ann Ogle, by the Chancellor's order, and the residue (except a sum barely sufficient to pay his commissions and expenses) was also, by the Chancellor's order, paid by him into court, and subsequently, also, by the Chancellor's order and Register's check, paid over to John Addison, as trustee for Mrs. Mary Bevans, and guardian to her children.

This whole fund having been paid over by the trustee of the court, in pursuance of the order of the court, it is impossible to conceive that he should afterwards be responsible to any person establishing a claim to it, nor did I understand the solicitor of the complainants as insisting upon that point. He seemed to think that some part of the proceeds of sale had not been accounted for, though he was not able to designate it clearly. But that evidently is not the fact; the whole fund is accounted for, and if any money was received from Howard Duvall, on his purchase of land from the testatrix and her husband, it became a part of the personal estate in the hands of the trustee and executor.

No fraud is charged against B. Ogle, but he is charged with great precipitancy in the settlement of the estate, and a combination with the Bevans to give the whole estate to them. It is the duty of a trustee and executor to use dispatch in the settlement of the estate confided to his trust; the period allowed by law to the latter for that purpose, is not a prescribed delay, but rather a restriction of it.

37*

No doubt the trustee acted with great and unusual imprudence, in undertaking and hastening the settlement of so large an estate without the advice of counsel, as he seems to have done; but that affords no reason why he should be treated with more severity than other trustees, or deprived of any reasonable presumption in his favor.

There is no evidence of any combination with the Bevans, to give them a greater part of the estate than they were entitled to. They were, in fact, too young to have participated in any scheme of the kind. The estate was nearly closed before Mrs. Bevans married again, and the proceeds of the real estate were paid over, and the final settlement of the personal estate made before there was any issue of the marriage.

The trust fund paid over, remained for a considerable time in the hands of the guardian, yet no attempt was made to assert the right of the complainants, which has since been established, nor even for a considerable time after the receipt of it from the hands of the guardian.

From all this, it is evident that the children of Mrs. Bevans, living at the death of Mrs. Ogle, were considered by the trustee and their mother, and the Chancellor himself, to have been entitled to the whole, and there is nothing to show that a contrary opinion was entertained by any one, until the proceedings instituted in this court, at a late period, after the death of their mother, or a short time before, on the petition of J. Bevans; although this ignorance of the law may not exempt the trustee from any liability, it contains no ground for treating him with harshness.

Let us now inquire into the liabilities of B. Ogle to the complainants, arising from his administration of the personal estate. It is now settled by the Chancellor's order of November 20th, 1844, and the proceedings in the petition case, and admitted in argument, that the complainants, children of Mrs. Bevans by her second husband, were equally entitled with those of the first to maintenance and education, out of the interest of the trust fund, and to a distributive share of the principal after the death of their mother. It seems to have been the desire of B. Ogle, from the first, to rid himself of the protracted trust contemplated

by the will of H. M. Ogle. He took out letters testamentary on the personal estate of the Orphans Court, and returned an inventory there. He filed the petition in the Chancery Court, in the name of the infants, stating that the several trustees had declined the trust, and praying that he might be appointed trustee to sell the real estate; after paying the only debt which the personal estate was inadequate to discharge, he deposited the residue in court, declined acting as trustee for the investment of the funds appropriated to secure the annuity to Mrs. Bevans, and procured the payment of the funds deposited to the guardian of the Bevans. He proceeded, in the mean time, to settle up the personal estate "as executor," in the Orphans Court, and to pay over the balance on the final account, under the directions of that court, to the persons by him and them believed to be entitled to it. But has he divested himself, by these proceedings, of the character of trustee, as to the personal estate, either under the will or under the decree?

There is no positive and direct disclaimer by him of the trust, to be found in any part of his proceedings. The strongest fact from which a disclaimer may be inferred, is the allegation by the infants in the petition for the sale of real estate, signed by him as their next friend, and which allegation he may therefore be presumed to have sanctioned, that the several trustees had declined to act; but this inference, it seems to me, could thence be fairly made only as to the real estate, as the real estate only was therein prayed to be sold, and although in the disposition of the personal estate he seems to have acted generally as if he conceived himself no longer under the obligations of the trust, yet, in some instances at least, paying to Mrs. Bevans $600, for the maintenance of herself, and education and maintenance of her children, he assumed the character of trustee. Whatever his intentions and desires were, however, and whether he had declined the whole trust under the will or not, the Chancellor's decree on the petition deprived him of it. His appointment was by the court, and his powers were, from that time, derived from, and dependent upon its decree; and what is the decree of the court? not that he shall sell the real estate, and bring

the money into court to be disposed of under the direction of the Chancellor, but that he shall sell the real, personal, and mixed estate whereof H. M. Ogle died seized, and which by the will was directed and authorized to be sold, and directs him to bring the money into court, to be applied under the Chancellor's direction, according to the will.

The decree was passed under the act of 1785, ch. 72, sec. 4. The petition was not an application by the trustee, nor by parties interested against the trustee, to administer the estate in the Chancery Court, and the Chancellor had no other authority to pass the decree but that derived from the act of 1785, and it imposed upon the trustee precisely the same obligations that were imposed upon him by the will.

Upon the petition of Mrs. Bevans to have a certain amount invested for her maintenance, the trustee, B. Ogle, declined acting as trustee, relative to the appropriation to Mrs. Bevans, made by the order of January 25th, 1816, and the Chancellor, by order of February 28th, reciting the first order, and the trustee's declining to act, appointed another trustee in the place of the said B. Ogle, under the said order, which, though an unusual proceeding, certainly left B. Ogle in the exercise of all his functions as trustee, except those which by the last order were transferred to another person, and though by depositing in court all the proceeds of the real estate then sold, not disposed of by the Chancellor, he was, as to that, free from any further responsibility as to them, yet any other fund proceeding from the real estate, and the residue of the personal estate, after the payment of the creditors, he was still bound to preserve and dispose of under the trust.

Admitting that he had, notwithstanding the decree of the Chancery Court, the power to dispose of the personal assets in the payment of debts in the Orphans Court, yet when they were paid, and a final account passed, the residue in his hands was a trust fund, to be administered as such. If there had been another trustee, it should have been paid over to him; but B. Ogle being both executor and trustee, the residue remained in his hands as trustee. 6 *H. & J.*, 162; 3 *Har. & McH.*, 179; 2

*G. & J.*, 220; 6 *G. & J.*, 25; and to exonerate himself from liability, he must administer it according to the trust, or under the authority of a competent tribunal. I have been able to find no special power or jurisdiction given to the Orphans Court over a trust of this kind, and that the court has general jurisdiction over trusts, even of personal estate, is not contended.

Treating the personal estate of Mrs. Ogle as legal assets, to be administered under the authority of the Orphans Court, and subject to its jurisdiction in the same manner as the personal estate of deceased persons usually is, let us see what the jurisdiction is with regard to a surplus after the payment of debts, and whether it has been properly exercised to the exoneration of the executor from any further claims ? The surplus is, of course, to be distributed among the next of kin or legatees.

By whom ? By the act of 1715, ch. 39, the Commissary General had power to make, or cause to be made, distribution of the surplus and transmit the account to the County Court. By the act of 1777, ch. 8, the Orphans Court, then constituted, were not required to transmit balances, but were given the same power as the County Court, nothing being said of the power to make distribution. These laws are superseded, however, by the act of 1798, ch. 101, and the whole subject is regulated by it. The power given by that act to distribute the surplus is not the same as that to pass the claims of creditors, or make allowances in the settlement of the estate. It has been decided by the Court of Appeals, in the case of *Owens* vs. *Collinson*, 3 *G. & J.*, 38, referred to by defendant's solicitor, and also in other cases, that the accounts themselves are *prima facie* evidence of their correctness. The right to pay claims of creditors depends on sub ch. 8, sec. 22, which provides that no executor or administrator shall discharge any claim against the deceased (otherwise than at his own risk) unless the same shall be passed by the Orphans Court, or unless the said claim be proved according to the following rules : And the court says, "the irresistible inference is, that if any executor or administrator *bona fide*, without knowledge of its injustice, pay a claim thus passed or proved, that the payment is not at his own risk." Sub ch.

11 provides "that when all the debts, &c. are paid, the administrator shall proceed to make distribution as follows." Sub ch. 10, sec. 6, "when it shall appear by the first or other account of an executor or administrator, with the will annexed, that all the claims, &c. have been settled, it shall be his duty to deliver up the estate in his hands to those entitled." By sub ch. 14, sec. 12, "any executor or administrator shall be entitled to appoint a meeting of the creditors or of persons entitled to distributive shares, or legacies, or a residue, on some day by the court approved, and passage of claims, payment, or distribution may be there made under the court's direction and control."

The chapter and section relied on by the defendant's counsel are sub ch. 15, sec. 12, "that the Orphans Court shall have full power, authority and jurisdiction to examine, hear and decree upon all accounts, claims and demands existing between wards and their guardians, and between legatees or persons entitled to any distributable part of an intestate's estate, and executors and administrators, and may enforce obedience to, and execution of, their decrees in the same ample manner as the Court of Chancery may." Secs. 16 and 17 of this sub ch. 15, provide for plenary proceedings and appeal.

It appears to me that the sections referred to in sub chs. 10 and 11, clearly indicate the obligation of the executor or administrator to ascertain the individuals entitled to legacies, distributive shares and residues. The Orphans Court are not required to do so by any part of the act, and it would be a strange duty to require of them, or of any court. They act, as other courts, upon the evidence produced to them. He administers the estate *in pais*. If he doubts as to who are entitled to distribution, legacy or residue, or in what proportions, by sub ch. 14, sec. 12, "he may appoint a meeting of the claimants, and payment or distribution may be made under the court's direction and control." In most cases he would be safe in acting under that direction and control; but he must show that the meeting was duly appointed, notification of some kind given to the parties interested, and the case presented to, and acted upon by the court. Whether he would have been safe

in this case, if these requisites had been complied with, is not clear; but in fact they were not complied with. All that appears to have been done after the passing of his final account on the 24th February, 1816, the balance of which appears to be money, is an order of the Orphans Court on the 27th, directing him "to pay over and deliver to John Addison, the guardian of the minor children of George and Mary Bevans, the property in his hands, to which said children are entitled under the will of H. M. Ogle." No time appointed, no notification to any body, so far as appears, nothing to show that the question as to who was entitled to the whole surplus was ever presented to or acted upon by the court. No distribution of the whole sum between the Bevans; no order to pay over the balance due on the final account, nor any reference to it; but simply an order to pay over and deliver to their guardian the property in his hands, "to which the said children are entitled." What specifics he had in hand, and to which the term "property" might be more fitly applied than to a money balance, did not appear; but the receipt shows that some such were in his hands, and might satisfy the terms of the order. We must, therefore, conclude, that this order did not, by its terms, authorize B. Ogle to pay over the balance due on his final account to the Bevans, and that if it did, the court had no authority to pass the order. The attention of the court was particularly directed to the 12th sec. of the 15th sub ch., being the one relied upon by the distinguished counsel of the defendants to sustain his view of the jurisdiction of the Orphans Court; but after all the reflection and consideration which it has been able to bestow upon it, it has satisfied itself that it applies only to contested questions *inter partes*, not to *ex parte* proceedings, and that opinion is confirmed by the 16th and 17th sections providing for plenary proceedings.

The cases referred to from English reports, 3 and 7 *English Ch. Reps.*, 326, 328; 2 *Ball & Beatty*, 337; 1 *Reeve*, &c., all establish the principle, that wherever there is a suit in Chancery, either by the executor or any person interested in the estate, for the administration of the assets, and the executor

pays either to creditors, legatees or distributees, by order of the court, he is protected by the order—the court having full jurisdiction in the matter and the executor compelled to obey, and all persons interested, being either parties or having notice given in the usual manner to present their claims, a decree of the ecclesiastical court is also conclusive on the parties, and cannot be reversed by the Chancery Court.

In one of the cases, the Chancellor says, he "never heard of such a case. What executor would be safe, if he was liable to answer for a distribution of assets made under a decree of the court?" All these cases apply to our Chancery Court, having general jurisdiction in matters of trust, and therefore, the trustee, B. Ogle, is safe in having paid over the proceeds of the real estate in pursuance of the Chancellor's order, although that order was erroneous. But the Orphans Court has no such jurisdiction; none, indeed, except what is given it by the legislature. It is expressly forbidden by sub ch. 15, sec. 20, of 1798, ch. 101, to exercise any other ; see also *Scott* vs. *Burch,* 6 *H. & J.,* 79; 2 *H. & G.,* 120. The powers, if given, must be also exercised in accordance with the grant, which we have seen has not been done in this case.

The distributions made in 1828 are liable to most of the objections to the authority of the court, and with greater force, some of the complainants being then *in esse* and infants. The complainants living at the death of Mrs. Bevans, are entitled to an account of the personal estate of H. M. Ogle, against the personal representatives of B. Ogle, as executor and trustee, and are entitled to their proportion of the balance of his final account, passed the 24th February, 1816, and also their proportion of the amount distributed between the Bevans, on the 1st day of October, 1828. The amount allowed to Mrs. Bevans, he would seem at present not to be accountable for, but as that may be elucidated by further testimony, no decision will be made on that point until the Auditor's accounts are returned. In taking the account, B. Ogle will be chargeable with any amount which can be shown to have been received by him, or which he ought to have received from Howard Duvall.

It is evident that some amount has been paid to B. Ogle, or to S. Ridout, for him; what amount does not appear, but may possibly be proved hereafter. He is also to be charged with the value of the negroes attempted to be manumitted who were above the legal age.

B. Ogle ought not to be charged for the advances made to Mrs. Bevans, for the maintenance of herself and children before the settlement of the estate, and which have been allowed by the Orphans Court. No other allowance for that period having ever been made, it appearing to have been a reasonable sum, and they being entitled to maintenance from the death of Mrs. Ogle, after such a lapse of time and the death of the executor, it must be presumed that there was evidence of its payment and of the necessity of its being paid, although the Orphans Court had no right to allow it, it being paid in execution of the trust, not of his duty as administrator. It is contended by the complainants that it ought to have been paid out of the interest, and that the principal of the estate could not be applied to that purpose.

The will actually authorizes the "trustees to apply the said estate and the rents and profits thereof to the maintenance of Mrs. Bevans, and her children," and although it appears from the latter part of the will to have been the intention of the testatrix that the interest and profits alone should be applied to that purpose, after they should have been received, I do not see how, from the expressions of the will, we could refuse to allow a payment made for that purpose out of the principal at that early period, and probably before any interest could be made. Besides, the executor accounted for some profits of the estate nearly enough to cover that payment, and which, though certainly legal assets as to creditors, for such a purpose as they have been applied to, ought to be considered profits.

The residue of the plate bequeathed to the children of Mrs. Bevans, vests, immediately on the death of Mrs. Ogle, in the children then born. The power of the trustees to sell it for their benefit, does not extend to the death of Mrs. Bevans, but

must be exercised within a reasonable time. Jewels cannot be deemed "plate."

B. Ogle is chargeable with interest on each child's part from the time he or she attained the legal age, and was no longer entitled to be maintained, on all the balances of his accounts in the Orphans Court on such sums as he should have accounted for as trustee or executor, from the time he should have settled the estate, or if received after that time, from six months after he received them.

The whole interest on the said balances may be considered as applied to the maintenances of the Bevans, agreeably to the Chancellor's order of November 20th, 1844, (by the principles of which I mean to abide,) until the birth of any one of the Conners, such an one is then entitled (agreeably to said order) to a due proportion thereof. What that proportion is cannot at present be ascertained. The will required that the children should be well maintained and educated, and the interest does not appear to have been an extravagant allowance for that purpose.

After the Bevans attained their majority, the interest being no longer applicable to their maintenance, should have been applied to the maintenance of the Conners, as required, and not having been so applied, they are entitled to receive it now. So far as that interest should have been received by those who have died, are their representatives entitled to an account, and no further.

John T. and Laura Bevans must account for the whole amount received by them from B. Ogle, over and above what it appears they should have received from the whole trust estate and the specifics to which they were entitled, with interest from the time it could be no longer appropriated to their maintenance. They are liable each, only for the amount received by him or her.

William C. Ogle is not responsible for any sum received by his wife, and *appears* to have no interest whatever in the land conveyed to B. Ogle, in trust; the bill as to him should be dismissed.

It is, therefore, this second day of March, 1849, by Nicholas Brewer, Associate Judge of the third judicial district, and by

the authority of the Chancery Court, adjudged, ordered and decreed that the defendant, Anna Maria Ogle, as executrix of Benjamin Ogle, account with the complainants for the proceeds of the real and personal estate of H. M. Ogle, both as to the trust, and executorship of said B. Ogle, and that the said John T. and Laura Bevans, account with them for the portions thereof improperly received by them. And that the Auditor, in stating the account, be governed by the principles herein decided; all questions which have arisen or may arise in the case, and not herein decided, are reserved until the final decree.

It is further adjudged, ordered and decreed, that the said Anna Maria Ogle, as executrix of Benjamin Ogle, account with the complainants for the personal estate of the said Benjamin Ogle, and any of the parties are hereby authorized to take testimony in relation to the said accounts and matters reserved before the Auditor, on the usual notice, or before any justice of the peace, on giving three days notice as usual. It is further adjudged, ordered and decreed, that the bill be, and the same is hereby dismissed as to the trustee, Doctor John Ridout, and the defendant, Wm. C. Ogle, with costs.

[From this order the defendants, except Dr. Ridout and Wm. C. Ogle, appealed. The cause was argued in the Court of Appeals, at its December term, 1850, before *Spence, Martin and Frick*, Judges, by *Thos. S. Alexander* for Mrs. Ogle, *Davage and Semmes* for Laura Bevans, *Cornelius McLean* for Wm. C. Ogle, and by *Oliver Miller and Alexander Randall* for the appellees. The court affirmed the order *"for the reasons assigned by the court below."* The following is the decree of the Court of Appeals in the case :

"This appeal having been argued by counsel for the parties, and fully considered by the court. It is, therefore, this twenty-sixth day of June, in the year eighteen hundred and fifty-one, by this court adjudged, ordered and decreed, that the decree of the 2d of March, in the year eighteen hundred and forty-nine, from which this appeal is taken, be, and the same is hereby affirmed, with costs of this appeal. In so doing, it is proper for

this court to add, that they understand the judge below as re-leasing Anna M. Ogle, as executrix of Benjamin Ogle, from responsibility for such proceeds of the real estate as have been accounted for and paid over by him, or brought into the Court of Chancery, in pursuance of the orders of that court, and the cause is remanded to the Chancery Court."

