BRODESS *v* THOMPSON.—1828.

BRODESS *vs.* THOMPSON.—June, 1828.

The orphans courts derive their powers mostly from statutory provisions, and are tribunals confessedly limited in their jurisdiction—unable to exercise any authority whatever not expressly given by law.

The interest or income of a minor's estate is the fund out of which he is to be maintained and educated, and under no circumstances could be exceeded, until the act of 1785, *ch.* 80, was passed; by the 9th section of that law, the orphans court may allow the guardian to apply a part of the personal estate, not exceeding a tenth, to the education of his ward; and the act of 1798, *ch.* 101, *sub ch.* 12, *s.* 10, only enlarged that authority, by extending the expenditure to any part, or the whole of the personal estate.

Should an application of the personal estate not suffice to maintain and educate a ward, suitably to his future destination, then such maintenance and education may also induce an application of a part of the real estate, with the approbation of the court of chancery, as well as the orphans court.

It is the province of the guardian under our laws, to take care of the person of his ward; and it peculiarly belongs to his office, to keep together and preserve his property of every kind and description.   Repairs necessary for those ends, within the compass of the ward's income, ought to be attended to, but *schemes of improvement*, under no circumstances ought to be engaged in; and the orphans court have no authority to sanction them, by an application of any part of the minor's estate.

APPEAL from *Dorchester* County Court.   This was an action of *assumpsit*.   The declaration of the plaintiff, (now appel-

lee,) contained sundry counts. 1. For divers goods, wares and merchandizes, sold and delivered. 2. *Quantum meruit* for the goods, &c. so sold and delivered. 3. For other goods, &c. sold and delivered; and that such goods, &c. were reasonably worth, &c. 4. For money paid, laid out, and expended. 5. For money lent and advanced. 6. For money had and received. 7. On an *insimul computassent*. 8. For meat, drink, washing, &c. furnished the defendant. 9. For meat, drink, &c. furnished to divers other persons at the request of the defendant. The defendant, (the appellant,) pleaded *non assumpsit*, and issue was joined.

At the trial the plaintiff offered in evidence an account between him and the defendant, with an order passed by the orphans court, authorising the plaintiff to build certain houses on the defendant's estate, and their appointment of viewers, with the return thereof. The account was as follows: "Dr. *Edward Brodess* in account with *Anthony Thompson*, his guardian, for the years 1821 and 1822." It commenced in March 1821, ended in December 1822, and charged the defendant with sundry articles furnished, cash lent, paid, &c. Lost time for certain negro slaves. Board, washing and lodging, &c. for the defendant, and board and attendance for certain of his negro slaves, and clothing, &c. and for building houses, &c. $1300 60. The whole then amounting to $1610 08. To which was added the balance due the plaintiff as guardian in his last account, $686 45, his commission of 10 *p. c.* with other money paid, board, &c. and for cash paid for valuing houses, $4, and allowance for attendance on the workmen on building the houses, $20. The amount of the debit of the whole account, $2381 80. After deducting credits, the balance due the plaintiff, as guardian, was $1869 02. Which account was settled with and passed by the orphans court. The order of the orphans court referred to, passed on the 13th of June 1820, whereby they "ordered that *Anthony Thompson*, guardian to *Edward Brodess*, be allowed to build a house on his ward's land, a single story 32 by 20—two rooms below, with two plank floors and brick chimney; and also a barn of good materials—all under the directions of *Gurney C. Pattison*." Then follows the

order of the orphans court, and certificate and report of persons appointed by that court at the instance of *Thompson*, to view and examine the buildings and improvements made on the farm belonging to *Brodess*, by *Thompson*, and also to examine and report on the quality and quantity of the materials, and also to ascertain the value thereof. They certify and report that they had examined, &c. and were of opinion that the buildings and improvements put on the said farm, were done in workmanlike manner, and at fair and reasonable prices; and that the charges made were such as ought to be allowed, &c. The defendant then prayed the court to instruct the jury, that the plaintiff was not entitled to recover in this action upon the evidence exhibited by him, and to direct them to find a verdict for the defendant. Which instruction the Court, [*Martin*, Ch. J. and *Spence* and *Tingle*, A. J.] refused to give, being of opinion, that the orphans court had authority to permit the guardian to put repairs on the real estate to the amount of the personal property of the ward; and that having passed his accounts for the same, it was *prima facie* evidence of its correctness. But the defendant was not precluded from showing that it was not correct. The court was also of opinion, that the orphans court had no authority to appoint appraisers or valuers of the repairs as done in this case, and that their proceedings and return were not legal evidence. The court were also of opinion that the allowance mentioned in the said final account of $4 to *H. Jefferson* and *J. Byus*, for valuing houses, and the allowance of $20 to the guardian for his attendance on the workmen in building houses, mentioned in the said final account, ought to be stricken out of the said account, and not allowed to the guardian; and so directed the jury. The defendant excepted; and the verdict being for the plaintiff for $601 20, and judgment thereon rendered, the defendant appealed to this court.

The cause was argued before EARLE, STEPHEN, ARCHER, and DORSEY, J.

*R. N. Martin*, for the Appellant, contended, that there was an absolute defect of power in the orphans court to pass the order in question; and consequently that the appellee was not

entitled to claim any thing under it. That the orphans court was competent to invest a guardian with authority to exceed the income of the estate intrusted to him, only in cases where they might deem an act of that kind proper for the ward's maintenance and education. He insisted, that if authority existed in the orphans court to pass an order of this character and extent, it must have been conferred by express enactment. It was clear that the orphans courts of this state are inhibited from the exercise of any constructive power whatever. They derive their existence and jurisdiction exclusively from the provisions of the acts of assembly; they must rely upon those statutes even for the rights which are strictly incidental to other judicial tribunals; and in fact, are indebted for all their powers, as well in the modes of their proceedings, as in the subjects upon which they may act, and the extent of their jurisdiction, to express statutory enactment. *Act of Ass.* 1798, *ch.* 101, *and ch.* 15, *s.* 20. *Scott vs Burch*, 6 *Harr. & Johns.* 67. Has the power assumed in this case been expressly given to the orphans court? That is the sole question; and this inquiry should be entered upon with a recollection of the character and structure of the tribunal with whose powers we have to deal. That it is confessedly a court of very narrow and limited authority; and that the end and intention of the acts of assembly, providing for its organization, will be best fulfilled, by withholding from it all jurisdiction, except such as has been clearly and expressly granted.

Into the testamentary system of 1798, *ch.* 101, appears to have been consolidated all the law of the state bearing directly upon the subject, and accordingly the power maintained by the appellee has been sought for in the 10th *section* of the 12th *sub chapter* of that act. And it has been said, that the following general expressions, *"and the said court, if it shall deem it advantageous to the ward, may allow the guardian to exceed the income,"* &c. are sufficiently comprehensive for the purpose. It was admitted, that if those general expressions stood alone, there would be much force in this construction of them. But they do not stand alone; and by looking to the language of the whole *section*—to the subject matter which constitutes the chief object of that provision of the statute—to the words by

which they are preceded and followed in the same sentence; and to the law as it remained anterior to the act of assembly in question, it will be seen, that the general expressions alluded to, must be interpreted in reference to the personal condition of the ward—his suitable maintenance and education—and not the improvement of his estate. The positions in favour of this construction were briefly summed up under the following heads.

1. The object to which the *section* looks, and which it means to regulate, is not the general improvement of the ward's estate, but his maintenance and education. This appears from the first part of the *section*, where the court is directed to ascertain the amount to be expended in the *maintenance and education* of the orphan; and from the concluding words, viz. "that no part of the real estate on account of *such* maintenance or education, shall be diminished, without applying to the court of chancery," &c. Evidently looking back and referring to the maintenance and education of the ward, as the object for which a guardian might be authorised to exceed the income of the estate, by the first part of the same *section*.

2. The manner in which the expressions relied on are connected with the words—"the court to ascertain the amount to be expended in the maintenance and education of the orphan, regard being had to his future situation, prospects and destination." The phrase, advantageous to the ward, being strictly personal, according to its grammatical signification; following immediately after the words that were employed in providing for the ward's maintenance, &c. forming part of the same sentence, and separated from them only by a semi-colon.

3. According to the law as it existed before the act of 1785, *ch.* 80, *s.* 9, and the testamentary system of 1798, *ch.* 101, the principal of an orphan's estate could not be encroached upon for any purpose. It was preserved for his use when he should attain the age of maturity, with almost religious care. The interest and profits of the estate was the fund out of which he was to be maintained and educated, and if that was insufficient the only alternative was to bind him to a trade. *Act of Ass.* 1715, *ch.* 39, *s.* 9. By the act of 1785, *ch.* 80, *s.* 9, the orphans court is invested, for the first time, with power to authorise a guardian to apply a *tenth* part of the personal estate to

the education of the ward; and the 10th *section* of the 12th *sub chapter* of the act of 1798, operates merely as an enlargement of that power, so as to comprehend any part or the whole of the personal estate for the same object. But it was evident, from the policy which seems constantly to have presided over the legislature, when acting upon this subject, that it was not intended to depart from the favourite principle of preserving the estate of the minor unimpaired, except for the high purposes of maintenance and education. The discretion confided to the orphans court by the *section* in question, was not to be exercised in determining upon the expediency of allowing the income to be exceeded in measures of improvement, as the erection of buildings, for the supposed benefit of the ward's estate; but upon the utility of such an expenditure, for his maintenance and education. It was foreseen that cases might occur, where an application of the principal, even for this object, would not be justified by the minor's condition and occupation in life. It was fit, therefore, that the subject should be committed to the discretion of the court. The propriety of exceeding the income for maintenance and education, not depending upon any universal rule, applicable alike to all cases, but to be regulated by the future situation, prospects, and destination of the ward.

*J. Bayly* and *Page*, for the Appellee, argued, that the jurisdiction was given by the act of 1798, *ch.* 101; and referred to *sub ch.* 12, *s.* 8, of that act, which recognized the right of the guardian to purchase slaves, stock and utensils, with the ward's money, with the approbation of the court; also to the 10th *section* of the same *sub ch.* by which the court, if deemed advantageous to the ward, may allow the guardian to exceed the income of the estate, and to make use of the principal, and to sell part of the same under its order.

EARLE, J. delivered the opinion of the court. The appellee in this case brought an action of *assumpsit* in *Dorchester* county court, to recover compensation for certain buildings, erected by him on the land of the appellant. He had been under the guardianship of *Thompson*, and while he was his ward, the buildings were put up, under the order, and with the approbation of the orphans court of that county, and at an ex-

pense greatly exceeding the income of his estate, both real and personal. And was it within the authority of the orphans court to pass such an order? is the question now submitted to this court.

The orphans courts derive their powers mostly from statutory provisions, and are tribunals confessedly limited in their jurisdiction, unable to exercise any authority whatever, not expressly given by law. The authority of the orphans court of *Dorchester* county, to issue the order in question, is accordingly sought for in the act of 1798, *ch.* 101, and more particularly, in the *tenth section* of the 12 *sub chapter* of that act. Does it confer the power contended for? is the point immediately before us.

The interest or income of a minor's estate, is the fund out of which he is to be maintained and educated, and under no circumstance could be exceeded, until the act of 1785, *ch.* 80, was passed. By the *ninth section* of that law, the orphans courts are invested with authority, to allow the guardian to apply a part of the personal estate, not exceeding a tenth part thereof, to the education of his ward. The act of 1798, *ch.* 101, in its *tenth section* of the 12 *sub chapter*, only enlarged this authority, by extending the expenditure to any part, or the whole of the personal estate, if necessary. The better education of the ward is the object of both laws, and the general expressions used in the *tenth section*, are to be construed with reference to this object. What shall be deemed advantageous to the ward, is to be understood, in respect to his maintenance and education, having an eye to his future situation, and prospects in life. That the legislature did not mean to extend the expenditure of the principal, to any other objects than those personal to the ward, is plain from the language of the *tenth section*, in the closing part of it. "No part of the real estate shall, on account of such *maintenance or education*, be diminished, without the approbation of the court of chancery, or general court, as well as the orphans court." Clearly indicating, by the relative terms such *maintenance or education*, the object of expenditure authorised in the first part of the same section. Should an application of the personal estate not suffice to maintain and educate suitably to the future destination of the ward, then such maintenance and education may also in-

duce an application of a part of the real estate, with the approbation of the court of chancery, or general court, as well as the orphans court.

As it is the unquestionable province of a guardian, under our laws, to take care of the person of his ward, so we think it peculiarly belongs to his office, to keep together and preserve his property of every kind and description.　Repairs necessary for these ends, within the compass of the income, ought to be attended to; but we apprehend that schemes of improvement, under no circumstances, ought to be engaged in.　They often prove expensive, and their tendency is to encumber the ward, and involve him in debt; and we are decidedly of opinion the orphans courts have no authority to sanction them, by an application of any part of the principal of minors' estates.

JUDGMENT REVERSED.