JOHN F. M. LOWE *vs.* SOPHIA LOWE, Ex'cx of LLOYD M. LOWE.

The jurisdiction of the orphans courts is not general but limited, and they cannot exercise any jurisdiction whatever not expressly given by statute.

In our testamentary system, there is no provision *expressly* declaring that the orphans courts may direct an executor to deliver a legacy except the 7th and 8th sections of the act of 1798, ch. 101, sub-ch. 10.

But if they have the power, under the 12th sec. of the 15th sub-ch. of this act, to order executors to deliver legacies in *other* cases, they can only do so *after* a final account, in regard to debts, has been passed.

The orphans courts derive their power chiefly from the act of 1798, and have no authority to act except strictly in accordance with the spirit and design of that law, and cannot order an executor or administrator to pay legacies or make distribution until a final account in regard to debts has been passed.

An order of the orphans court appealed from, directing an executor to sell the personal estate to pay debts, is *prima facie* correct, and the appellant must show that the condition of the estate was such as to render the order unnecessary and improper, before it will be reversed.

The subject of directing sales to pay debts is one in which, from its nature, some latitude of discretion in the orphans court must of necessity be allowed, and such necessity is recognised by the act of 1798.

Where the debts are small compared with the assets, consisting of specific articles of property, and a sale of part only is therefore necessary, the order of sale should designate with as much certainty as practicable what property is to be sold.

APPEAL from the Orphans Court of Prince Georges county. This appeal was taken by the appellant from the refusal of the orphans court to order the appellee, as executrix of Lloyd M. Lowe, to deliver over to him certain personal estate which had been devised to him by the said testator, and from an order passed by said court directing the said executrix to sell as much of the personal estate as may be sufficient for the payment of all outstanding debts, claims and commissions. The testator, who died in 1849, by his will devised to the appellant certain real and personal property, but by a codicil revoked this devise, and in lieu thereof, gave him the real estate and negroes for the term of seven years from his death. All the other facts of the case are fully stated in the opinion of this court.

Lowe vs. Lowe.

The cause was argued before LE GRAND, C. J., ECCLE-STON and MASON, J.

*Samuel H. Berry* for the appellant, argued, that the court below erred in refusing the order asked for, because:—

1st. It was intended by the testator that the appellant should have the possession and use of that portion of the property devised and bequeathed to him, for seven years *from the time of his death* until the end of said term, and this intention should be carried into effect. 2 *Md. Rep.*, 90, *Hanson vs. Brawner.*

2nd. More than thirteen months had elapsed from the date of her letters testamentary to the filing of the appellant's petition, after which time it was made her duty by law to make distribution of the personal estate, and it does not appear from the records of the orphans court that the time was extended. *Act of* 1798, ch. 101, sub-ch. 10, secs. 9, 10, and sub-ch. 8, secs. 13, 14. 2 *Md. Rep.*, 420, *Lark vs. Linstead.* 7 *G. & J.*, 475, *Coward vs. State.*

3rd. The law vests in the orphans court power to control the personal estate of deceased parties so long as it remains in the hands of executors and administrators. 3 *Bland*, 184, *Hewitt's Case.* 4 *Md. Rep.*, 1, *Cassily vs. Meyer.* *Act of* 1798, ch. 101, sub-ch. 8, sec. 3.

The court also erred in passing the order for the sale, because:—

1st. The appellee had, before date of her application for the order, filed in the orphans court and exhibited for passage her first and final account, showing a large balance in her hands due the estate, and this account had been passed upon by the court, which is conclusive that no debts could have been outstanding against the estate. 2 *Md. Rep.*, 420.

2nd. The devises and bequests to the appellant were specific, and the law always protects specific legatees and legacies. 7 *G. & J.*, 265, *Kent vs. Somervell.*

3rd. The policy of the law is opposed to the sale of more property of deceased parties, in the hands of executors and

administrators, than is necessary to pay debts, and favors a distribution *in kind.* And in this case no proof was offered to the court showing that a sale was necessary to pay debts. 6 *G. & J.,* 171, *Evans vs. Iglehart.* 8 *Do.,* 159, *Wilson vs. Negro Ann Barnet.*

4th. The powers vested in the executrix by the order were not properly defined, and it is too indefinite and general in its terms. The orphans court have the right to exercise general chancery jurisdiction in such cases, and they ought to distribute among the specific legatees the burthen of the debts.

5th. It would have been more consistent with law and justice had the court, upon satisfactory proof of the necessity to sell specifically devised property to pay debts, directed the appellee to hire, or sell for a term of years, a portion of the property of all the specific legatees until a sufficient sum was realized to pay the debts. 6 *Gill,* 299, *Cornish vs. Willson.* 5 *Md. Rep.,* 493, *Alexander vs. Worthington.*

*Daniel C. Digges* and *Thomas F. Bowie* for the appellee, insisted, that by the true construction of the will and codicil of the testator, which are to be construed together, the appellant was not entitled to the property claimed by him immediately after the testator's death; and that the seven years did not commence to run from that period, and therefore the appellant was premature in his application, and then argued upon the whole record:—

1st. That the orphans court were right in refusing to pass the order requiring the executrix to deliver up to the appellant his specific devises, the proceedings in said court then showing that the estate of the testator was not settled up and that no final account at that time was passed thereon, and that the debts and claims against the estate were not discharged or settled. See the *Act of* 1798, *ch.* 101, *sub-ch.* 8, *secs.* 1, 2, 6.

2nd. The court was right in passing the order for a sale to pay debts upon the application of the executrix. *Act of* 1798, *ch.* 101, *sub-ch.* 8, *secs.* 3, 4. 2 *Md. Rep.,* 104, *Rieman vs. Peters.* The order directs the residue *not specifically*

devised shall be first sold, if there be such, and then the general personal estate. Is not this the law? Courts of equity will sometimes marshall assetts to relieve a specific legatee, but the orphans court is not the tribunal in which such a question can be raised. They are bound to order the sale of the personal estate, for this is the primary fund from which debts are to be paid.

3rd. The order for the sale being in the discretion of the court, they being in the nature of things the only tribunal to judge of its propriety having the whole estate before them, upon analogy, it is insisted that from such an order no appeal will lie. 2 *Gill*, 241, *Compton vs. Compton.* 4 *Md. Rep.*, 493, *Ex-parte Shipley & Wife.*

Eccleston, J., delivered the opinion of this court.

By the will of Lloyd M. Lowe, the appellant, John F. M. Lowe, and his sister, Sophia A. Lowe, were appointed executors. In a second codicil to the will, the testator revoked the appointment of the appellant and constituted John H. Lowe and the said Sophia A. Lowe executors. In consequence of a caveat to the will and codicil, letters *pendente lite* were granted to John H. and Sophia A. Lowe. After a decision in favor of admitting the will and codicil to probat, John H. Lowe declined acting as executor, and letters testamentary were granted to Sophia A. Lowe, on the 15th of August 1851.

On the 16th of May 1851, the appellant filed in the orphans court a petition, alleging, that under the will of his father, (Lloyd M. Lowe,) and the codicil thereto, he was entitled to have then delivered over to him certain real estate and sundry articles of personal property, and praying that the court would issue a summons for the executrix, commanding her to appear and answer the premises; and that they would pass an order requiring her to deliver to him the real estate, together with all the negroes mentioned in the petition, with their increase; also, all the horses, cattle, sheep and hogs left by the deceased to the petitioner, with their increase, or account with him for

Lowe *vs.* Lowe.

the full value thereof; and also, to account to him for all the plantation utensils and books of which the deceased died possessed; and to account with the petitioner for the rents and profits of the real estate, the hire of the negroes and the use of the stock from the death of the deceased; and to grant him such other and further relief in the premises as his case might require. Copies of the will and the last codicil were filed as parts of the petition.

The executrix was summoned, but there does not appear to have been any answer filed or any testimony taken under the petition.

The proceedings which took place in the court, as presented in the record, appear in a summary statement of them made by the register of wills. According to which statement, on the 18th of July 1854, the administrators *pendente lite* exhibited for passage their first and final account on the estate, in which they charged themselves with the inventory and various receipts, amounting in the whole to $9832.60, and craved allowance for payments and disbursements, amounting to $2295.56. And on the same day the executrix exhibited and presented for passage her first and final account on said estate, charging herself with the inventory returned by her as executrix, together with various receipts, amounting to the sum of $8905.35½, and craving an allowance for payments and disbursements to the amount of $2629.66½. On the 30th of June 1854, prior to the passage of these accounts, the present appellant filed a petition objecting to the allowances claimed and insisting upon full proof of the same. And the record states, that "on the 1st day of September 1854, upon a full hearing and argument, the said court allowed a portion of the allowances claimed and rejected the residue for want of full proof, and because a part thereof were not proper charges against said estate." The record also states, that "on the 19th day of September 1854, the said administrators *pendente lite* and the said executrix came into court and petitioned the court to pass an order authorising them respectively to sell a portion of said personal estate for the purpose, as they stated,

of paying debts, whereupon the court, after full argument, refused to order the said executor to deliver to the said John F. M. Lowe the personal property devised to him by the aforesaid will and codicil of the said Lloyd M. Lowe, as prayed in said petition, and upon application of said executrix, passed the following order, from which refusal and order the said John F. M. Lowe prayed an appeal to the Court of Appeals of Maryland, which was granted by the court." And then the order referred to is given as follows: "Ordered by the orphans court of Prince Georges county, that Sophia A. Lowe, executrix of Lloyd M. Lowe, be and she is hereby authorised and directed to sell as much of the personal estate of her said testator as may be sufficient for the payment of all outstanding debts, claims and commissions that may be due from the said estate; provided, however, that in making said sale she shall first resort to the sale of any personal property which may not be specifically devised by the will and codicil of said testator, (if there be any such property,) and if not, then to the general personal property, or so much thereof as may be necessary therefor, whether the same be specifically bequeathed or not. She shall give three weeks' notice of the time and place of sale, (which shall be on the premises,) by advertisement in some newspaper published in Prince Georges county, and the sale shall be for cash or on a credit of six months, at the discretion of said executrix; in the latter event, bonds, with security to be approved by her, to be required of the purchasers."

Thus, it appears, this appeal is upon the refusal of the court to order the executrix to deliver to the appellant the personal property claimed by him under the will and codicil of his father, and also upon the order passed at the instance of the executrix authorising her to make a sale.

The jurisdiction of the orphans court is not general but limited. 6 H. & J., 79. 2 H. & G., 126. 2 Md. Ch. Dec., 452. And the 20th sec. of the 15th sub-ch. of the act of 1798, ch. 101, provides, that "the said orphans court shall not, under pretext of incidental power or constructive authority, exercise

any jurisdiction whatever not expressly given by this act or some other law."

In our testamentary system, we find no provision expressly declaring that the court may direct an executor to deliver a legacy, except the 7th and 8th sections of the 10th sub-ch. of the act of 1798, ch. 101. The 7th section relates only to distributive shares and to money legacies, and therefore does not embrace this case. The 8th section is in reference to specific legacies, but to obtain relief under it, the party applying must file his petition and satisfy the court that he is really in want of subsistence or greatly straitened in circumstances. In addition to which, the court must be satisfied that the assetts, exclusive of all specific legacies, will not nearly be exhausted by debts, and then they may direct the executor or administrator to deliver the legacy or bequest, but the party will be required to give bond with security for returning the same, or an equivalent, with interest, whenever so directed by the court. There is nothing in this case which will permit us to suppose for a moment that the appellant made his application under this section, as there is no proof whatever of his being in the circumstances required by the section.

If, however, it should be admitted, that under the 12th sec. of the 15th sub-ch. the court may order executors to deliver legacies in other cases than those provided for in the 7th and 8th sections which have been referred to, still it is necessary to ascertain at what time or under what circumstances such an order may be passed. To ascertain this, we must examine not only those provisions which relate to the power of the court particularly, but also to those which prescribe the duties and regulate the rights of executors.

The 10th sub-ch. regulates the manner in which the executor or administrator shall account. The 3rd section provides, that if the first account shall not show the estate to be fully administered, another account shall be returned within six months thereafter, and within every succeeding term of six months an account shall be returned, until the estate shall appear to be fully settled.

45     v.6

Under the 6th section, "when it shall appear by the first or other account of an executor or administrator with the will annexed, that all the claims against, or debts of the deceased which have been known by or notified to the executor or administrator have been discharged, or retained for or settled, it shall be his duty to deliver up the estate in his hands to those entitled."

The 10th section makes very similar provisions in regard to an administrator of an intestate's estate.

The 11th sub-ch. commences by declaring, that "when all the debts of an intestate, exhibited and proved or notified and not barred, shall have been discharged, or settled and allowed to be retained as herein directed, the administrator shall proceed to make distribution of the surplus."

And by the 16th sec. of the 11th sub-ch., "in case the surplus remaining in the administrator's hands after payment of all just debts exhibited and proved, or notified and not barred, or after retaining for the same, shall consist of specific property;" if the administrator cannot satisfy the parties entitled to the property, he may apply to the court to make distribution.

See what is said in 4 *Md. Ch. Dec.*, 449 to 451, *Conner vs. Ogle*, in regard to the duty of an executor or administrator to make distribution, and the authority of the court on that subject.

The sections which have been referred to, we think, indicate very clearly that the law requires, first, a full or final account of the administration, so far as regards the debts due from the estate, before legacies are to be paid or distribution made. And as the orphans courts derive their power chiefly from the act of 1798 and possess but limited powers, they can have no authority to act except strictly in accordance with the spirit and design of that law. Consequently, we think, they have no power to order an executor or administrator to pay legacies or to make distribution until a final account in regard to debts has been passed. And this view of the subject will not have the tendency to delay the final settlement of estates unless the parties interested in the matter think proper not to avail themselves of those provisions in the law, which, when called into

action, will afford ample relief against improper delay. The executor is required to account within certain stated periods or when the court may direct, and by the 9th sec. of the 10th sub-ch., if he fails to do so, his letters may be revoked on the application of any person interested. Or, when the court order an account to be passed, if not complied with in proper time, they may enforce their order by attachment and sequestration under the 20th sec. of sub-ch. 15.

In a court of chancery, possessing general and not limited jurisdiction, a decree will not be passed directing legacies to be delivered, or distribution to be made, without first requiring an account to be taken, for the purpose of ascertaining the full extent to which the assets are responsible for debts and expenses, unless perhaps under some special or peculiar circumstances.

It has been contended on the part of the appellant, that a final account was passed by the executrix; or if not, yet the matters set out in the record show, that the debts had all been paid when the court refused to pass the order asked for. It appears, however, that the executrix exhibited her first and final account, but that account was not passed. Some of the payments and disbursements claimed were allowed and the rest rejected. Part of those rejected were not allowed, on account of the want of full proof, and part because they were not proper charges against the estate. But it does not appear what was the amount of claims allowed, or which of them were rejected for want of proof, or which were not allowed as being improper charges. The executrix charged herself with the inventory, together with various receipts, amounting to the sum of $8905.35½. But how much the inventory amounted to, or what sums she received, exclusive of the inventory, no where appears. Neither the inventory or the administration account is in the record.

It has been said by the appellant's counsel, that if all the disbursements claimed by the executrix had been allowed, there would have remained a balance of over $6000, which was more than sufficient to cover the value of the legacies

claimed by the appellant. But without the inventory or any evidence to show the appraised value of the various specific legacies mentioned in the will, how is it possible for us to ascertain that there are sufficient assets, exclusive of the specific legacies, to satisfy the debts and the costs of administration?

For want of sufficient information in the record, as to the true condition of the estate, we do not feel authorised to say the orphans court erred in refusing to order the executrix to deliver to the appellant the personal property claimed by him under the will and codicil of his father.

Nor can we say the appellant is entitled to a reversal, because the court passed the order for a sale.

One of the principal grounds relied upon for a reversal on account of this order is, that it does not appear in the record that the executor exhibited to the orphans court sufficient proof of the existence of unpaid debts, which rendered a sale necessary.

If, upon an order of this sort, an appeal may be taken, it is not obligatory on the appellee to show, by proof, such circumstances as will justify the passage of it, because the order is *prima facie* correct. And the party seeking to reverse it must show error, or, in other words, that the condition of the estate was such as to render the order unnecessary and improper. The theory of the present appellant would create difficulties, and produce much delay and inconvenience in the settlement of estates. We presume it rarely happens, when such an order is granted, that there is before the court actual proof showing the necessity for it. Not unfrequently they act upon their general knowledge of the condition of the estate, derived from what has taken place from time to time, without having before them, when the order is passed, such *proof* of the necessity for it as upon strict examination might be deemed sufficient for that purpose. And it is one of those subjects, connected with testamentary affairs, in which, from its nature, some latitude of discretion in the court must of necessity be allowed. The act of 1798, in some of its pro-

visions, recognizes such necessity. In section 3rd of sub-ch. 8, power to order a sale is given to the court when applied to by an executor or administrator, and under the 4th section of the same sub-ch. they may, *ex officio*, pass the order. When the debts are paid and the court are called upon to make a distribution of the residuum, consisting of specific articles of property, they may direct a sale of the whole, or of any part, if they deem it advantageous to do so. See sub-ch. 11, sec. 16.

We have spoken of the order of sale as *prima facie* correct. On this subject the appellant's counsel has referred to *Wilson vs. Barnett*, 8 *G. & J.*, 165. That was a petition for freedom, in which an order of the orphans court directing a sale of negroes was relied upon as evidence to show an insufficiency of assets. The Court of Appeals held it to be *ex-parte*, and not evidence for any purpose in that case. The order is set out in the report of the case, and it simply authorized a sale, without saying for what purpose, and without making any allusion to debts or to the condition of the assets. And it came before the court collaterally. The question there presented was essentially different from the one now under consideration. From this record it appears that the order was passed the same day on which the court refused to order the property to be delivered to the appellant, and the same appeal, in express terms, includes both the refusal to gratify the application of the appellant and the granting of the order of sale. It therefore appears not to have been *ex-parte*, at least so far as relates to the appellant; and the sale is directed for the payment of "debts, claims and commissions." Moreover the order comes before us upon appeal, and being the decision of a court having jurisdiction in the premises, it is to be considered as correct, until the party appealing shows it to be otherwise.

This order has been also objected to as being too general and vesting too much discretion in the executrix, in regard to the quantity of property to be sold. But the information contained in this imperfect record, upon which we are called

to form an opinion in regard to this objection, is too indefinite and vague to justify a reversal on such a ground. The order is restricted to a sale of so much property as may be necessary for the payment of "all outstanding debts, claims and commissions, that may be due from said estate." In this respect it is consistent with the usual form in the chancery court in decrees for the sale of real estate to pay debts. If under such an authority the executrix should attempt to sell property much beyond the necessity of the case, or should act in any manner oppressively to the legatees, they might obtain relief by making application to the orphans court to stop the sale altogether, or to limit the extent of it, or relief might be obtained by injunction from a court of equity.

This order also directs, by way of restriction, that property not specifically bequeathed, if any, shall first be sold; and if none, then so much of the general personal property as may be necessary. There is nothing in the record to show whether there is or is not a sufficiency of property not specifically bequeathed to pay all the claims against the estate. If there is enough this restriction in the order rendered it harmless in regard to the appellant, unless the executrix should exceed her authority. And if an attempt of that sort should be made he would have the power to arrest or frustrate it, by an application to the orphans court, or to a court of equity, as already intimated. But the truth is we are entirely too much in the dark, in reference to both branches of this case, to feel justified in reversing the action of the court below, from a conviction that they were wrong in either.

Upon the subject of granting an order of sale, before taking leave of this case, we will remark, that when the amount of claims against the estate is but small compared with the assets consisting of specific articles of property, and of course a sale of part only is necessary for payment of debts, the court ought to be careful to designate, with as much certainty as the circumstance will permit, what property should be sold.

Not intending to send this case back, we have declined expressing any opinion in regard to the provisions of the will

or codicil, either in reference to the appellant, or other legatees or devisees. This affirmance of the decision below, in relation to the refusal to order the delivery of the property to the appellant, is neither an affirmance or denial of the appellant's title to the property, claimed by him under the will and codicil; but it simply affirms the propriety of that refusal, because it does not appear that the estate was in such a condition at the time as entitled the party to insist upon an order being passed by the court directing the property to be delivered to him, even if the will and codicil entitled him to receive the property as soon as the debts were paid, and a final administration account should be passed.

To send this case back would be more expensive to the parties than the commencement of a new proceeding in the orphans court, or perhaps in a court of equity, and we see no necessity for sending it down for the purpose of preserving any rights from injury.

*Affirmed.*