## SINNOTT *v.* KENADAY.

COURTS; JURISDICTION; EXECUTORS AND ADMINISTRATORS; ADMINISTRATION.

1. The Supreme Court of the District of Columbia, holding a special term for Orphans' Court business, has jurisdiction under the Act of Assembly of Maryland of 1798, Ch. 101, Subch. 15, Secs. 1 and 12, upon an application seasonably made, to require an executrix to pay over to the next of kin, after the payment of debts and legacies, the personal estate of which the testator died intestate.
2. But the next of kin can not compel an executrix to distribute such personal estate among them prior to the time allowed for the filing of claims against the estate, although from her action in making a partial distribution it would appear the estate was free from debt; and a petition for that purpose prematurely filed will be dismissed.
3. Such a petition, however, should not be dismissed absolutely, but should be dismissed without prejudice to the right to renew it at the proper time.

No. 748.   Submitted December 9, 1897.   Decided January 5, 1898.

HEARING on an appeal by the petitioners from an order

of the Orphans' Court dismissing a petition for the distri-
bution of the personal estate of a decedent.  *Modified and
affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a decree of the Supreme Court of
the District, holding a session for Orphans' Court business,
in the course of the administration of the estate of Alex-
ander M. Kenaday, deceased.  Said Kenaday died March
25, 1897, leaving a will which was admitted to probate in
April.  The widow, Mary Louise Kenaday, was named as
executrix in said will and qualified as such.  The testator
devised all of his real estate to his said wife, together with
certain personal property.  The following legacies were
made by the testator: To his sister, Arabella Sinnott, $12,-
000 in registered United States bonds on special deposit
with National Metropolitan Bank, and to the children of
his deceased sister, Martha J. Pyles, "out of the residue of
the 4 per cent. bonds deposited as aforesaid, $3,500." These
were six in number, and the bequests were in unequal
amounts.  There was no residuary clause in the said will.

September 17, 1897, Arabella Sinnott filed her petition
alleging the facts aforesaid.  She further alleged that she
and the other legatees, children of Martha J. Pyles afore-
said, were the next of kin to the testator, and that in ad-
dition to the legacies bequeathed to them, they were entitled
to the undisposed-of residue of the personal property of the
testatator.

This residue, it was alleged, consisted of about $9,500 of
United States bonds, acquired after the date of the will, of
about $810 in cash in bank, and of $1,715 in uncollected
checks for interest on said bonds, and $248 in pension
checks.  She alleged the delivery to her of the bonds be-
queathed, but charged that the executrix had retained the
personal property aforesaid, denying petitioner's right to
any part thereof as next of kin.  It was also alleged that

there were no debts against the estate. The prayer was for an order directing the executrix to pay over to petitioner, under her claim as next of kin, one-half of the property aforesaid.

On September 29, three of the children of Martha J. Pyles filed a petition setting up substantially the same facts as in the petition of Arabella Sinnott aforesaid. In addition, they alleged that the legacies of $500 and $250, respectively, to Eloise Pyles and Henry C. Pyles, had lapsed and were retained by the executrix. They further alleged that the executrix, instead of delivering to them the bonds bequeathed to them, in their several amounts, had paid the several amounts in money, and that said bonds were worth, at the time, a premium of 13 per cent. They prayed for distribution of their part of said residue as next of kin, and for an order directing the payment to them of the difference between the face value of the bonds bequeathed and their value as aforesaid.

The executrix demurred to both petitions, assigning as grounds thereof: First, that the court had no jurisdiction to grant the relief prayed for; and second, that the time provided by law for the distribution of the estate had not arrived. The demurrer was sustained and the petitions were dismissed. From that decree all of the petitioners have appealed.

*Mr. F. P. B. Sands* and *Mr. W. A. Milliken* for the appellants:

1. The petitioners having required that the contest should be determined upon petition and answer pursuant to the provisions of section 54, chapter 35, of the Compiled Laws, D. C., it was error for the court to dismiss the petition and so deny justice to the petitioners, the duty of the court being to require the answer upon oath from the widow and executrix, and to determine the rights of the parties to the controversy. The petitioners having shown that the executrix had

failed to account for certain personal estate of the decedent mentioned in the will—it was error for the court to refuse to entertain the petitions and compel her to account therefor

2. There is no limitation in the law as to the right of any distributee of an intestate estate to submit to the court his or her petition for its judgment upon a disputed claim; and when such contest is brought before the court it is error to refuse to consider and determine the right of contest. It was perfectly competent for the court below to hear and determine the right of this contest, and by its decree lay down a rule for the guidance of the executor in distribution of the personal estate in question when, within the requirements of the law affecting creditors, the estate is to be settled and distribution made, and it was error to dismiss the petition. The petitioners show that whilst the will gives them United States bonds in specific amounts, the executrix unjustly has given them only the face value of the bonds, which were at a premium of 13 per cent.; an unfair payment, which leaves them a just claim against her for the amount of the premium and whatever of interest on said bonds she may have collected, and it was error for the court to refuse to determine that claim when presented. *Ogden* v. *Pattee,* 149 Mass. 82; *In re Mowry,* 16 R. I. Rep.

3. A perusal of the will and of the inventory demonstrates the rights of these petitioners. The devise of all the realty to his widow, in second clause, with the specific legacy of the $5,000 Richmond bond in a later clause of the will, make it clear that the testator did not intend to give her any interest in the personalty mentioned in the third clause of the will. *Capron* v. *Capron,* 12 Cent. Rep. 43; *Smith's Appeal,* 103 Pa. 559; *Walton* v. *Walton,* 5 Johns Ch. 262. The language of that clause precludes any claim on the widow's part to any portion of the estate therein mentioned. *Litheullier* v. *Tracy,* 3 Atk. 774.

4. The specific legacies of certain U. S. 4 per cent. bonds to these petitioners showed that the attention of the testator

was directed to the bonds held by him; and his failure to dispose of the remaining United States bonds shows clear intent to let them go into the residue of his estate. His failure to add a residuary clause clearly results in his dying intestate as to those bonds, and the interest thereon, as well as to the other items above referred to. 2 L. R. A. 849 (note), 716*, 719*, and note 1, pages 725, 748, Jarman on Wills.

*Mr. Wm. Henry Dennis* for the appellee:

1. These petitions were, in any view, too premature to be considered. Even if the special term for Orphans' Court business has any power or duty to adjudge whether the executrix must distribute in such a case as this, it can only be invoked when the time for distribution has arrived; that is to say, more than one year after the date of the letters testamentary. Prior to that the court can not be advised whether there will be any surplus to distribute, and, therefore, it will not entertain what may prove to be a mere moot case. The rights of creditors are paramount during at least one year from the date of the letters, and any distribution before that time would be at the peril of the executrix and her sureties. Md. Act of 1798, Ch. 101, Subch. 8, Secs. 13, 14; Dennis, Probate Law D. C., 64, 65; *Lowe* v. *Lowe*, 6 Md. 347.

The act of 1798, subchapter 10, sections 7 and 8, provides elaborately for the method in which legacies or distributive shares may be ordered to be paid in advance of the regular time; and the inference is obvious that they are not to be so ordered in any other way.

2. The enforced distribution of any residue in the hands of an executor, after payment of debts and legacies, is exclusively within the jurisdiction of equity or chancery, and the doctrine is unknown in any other court. *Pettit* v. *Smith*, 1 P. Wms. 7; *Hatton* v. *Hatton*, 2 Strange, 865; 2 Wms. on Exrs. 1st ed., *1270. This arises from the fact that the result is attained only by decreeing the executor to be a

trustee for the next of kin; and, of course, matters of trust are exclusively within the cognizance of chancery. Where a testator, as in this case, appoints an executrix, he does not "die intestate" as to any part of his personal property, for the legal title to all of it vests in the executrix, subject only to the obligation of paying debts and legacies. Story, Eq. Jur., Sec. 1208; *Hays* v. *Jackson,* 6 Mass. 149; Lowndes on Legacies, 249, 250.

There is no parallelism between this case and the descent of undevised real estate to the heir. The next of kin could derive a legal claim, if at all, only from the Statute of Distributions, and this statute does not extend to such a case. Subchapter 11 of the Maryland Act of 1798, Dennis, 81, is substantially a re-enactment of 22 and 23 Chas. II, Ch. 10. That act was decided not to vest jurisdiction in the ecclesiastical courts in such a case as the present, and in re-enacting it, by a familiar principle of statutory construction, the decisions in regard to it also became law. 23 Am. & Eng. Encyc. L. 370.

Said subchapter 11 is headed "Distribution of an intestate's personal estate." It provides that when "all the debts of an intestate" shall have been discharged or settled, etc., "the administrator shall proceed to make distribution of the surplus." The word "intestate" occurs a dozen times in the chapter, and "administrator," several times; but the word "testator" or "executor" is never mentioned therein. Even if this were an unintentional omission, it is not such as a court can supply. "Incidental power or constructive authority" is forbidden to the Orphans' Court. Act of 1798, Ch. 101, Subch. 15, Sec. 20.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. It does not appear from the record whether the demurrer was sustained upon one or both of the grounds stated; but it is understood that it was upon the second only. However, both grounds have been pressed in sup-

port of the decree, on the argument on behalf of the appellee, and must be considered.

Some minor questions relating to the rights of the petitioners, both as legatees and next of kin, have also been discussed. These were evidently not considered on the hearing of the demurrer, and do not properly arise at this stage of the proceeding. Their consideration and determination now would be premature.

2. Coming, then, to the two grounds of the demurrer in their order, we are of the opinion that the Orphans' Court would have the jurisdiction to grant relief of the nature prayed for, upon a seasonable petition.

The provisions of the Maryland act of 1798 are ample for the purpose. Ch. 101, Subch. 15, Sec. 1; Id., Sec. 12; *McLane* v. *Cropper*, 5 App. D. C. 276, 292; S. C. 6 App. D. C. 119; *Conner* v. *Ogle*, 4 Md. Ch. 425, 449, 450; *Dorsey* v. *Dorsey*, 9 Md. 31; *Snively* v. *Beavans*, 1 Md. 208; *Watkins* v. *Bevans*, 6 Md. 489; *Dorsey* v. *Dorsey*, 10 Md. 471; *Union Bank* v. *Smith*, 4 Cr. C. C. 509, 512; *Gwynn* v. *Dorsey*, 4 G. & J. 458, 461.

3. The second ground of the demurrer was well taken. The time had not arrived when the legatees or distributees could compel payment or distribution. Whilst it would seem to be the duty of the executor of an estate, when satisfied that no debts, or only trifling ones, exist against the same, to make as speedy settlements as possible with the legatees, it is not, at the same time, a legal duty that can be enforced until the time required for the presentation of the claims and the exhibition of the account shall have expired. It would seem from the action of the executrix, in delivering the bonds bequeathed to one of the petitioners and money in lieu thereof to others, that the estate was practically free of debt; but, under the provisions of the statute in respect of the presentation of claims and their payment, the court can not assume that no claims or demands will hereafter be presented for payment. Should there be such, the execu-

trix, having made premature distribution of the estate, would be liable for their payment when legally established. The court did not err in sustaining the demurrer for this reason. *Lowe* v. *Lowe,* 6 Md. 347, 354.

4. Under the circumstances, we think it was within the discretion of the court to retain the petitions for hearing when the time shall arrive therefor under the statute, or to dismiss them. But the dismissal ought to have been without prejudice to the right of renewal at the proper time. Instead thereof it was made absolute by its terms; the record not showing that attention was called to the point at the time.

Whether such unqualified decree of dismissal would prove a bar to the entertainment of the petitions at a later period, need not be considered.

The decree will be modified so as to show a dismissal of each petition without prejudice, and as modified will be affirmed. The costs of this court will be taxed against the appellee to be paid from the assets of the estate in her hands. It is so ordered.                    *Modified and affirmed.*